# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

John Doe I, John Doe II, John Doe III,
Jane Doe I, John Doe IV, John Doe V,
John Doe VI, and John Doe VII,

Court File No.: 08CV 306 DWF/SRN

       Plaintiffs,

v.

Mulcahy, Inc., Mulcahy Development, LLC,
Mulcahy Family, Limited Liability Limited
Partnership, Mulcahy Family Limited
Partnership, and Gary T. Mulcahy, Sr. in
his official and personal capacities,

       Defendants.

**CLASS-ACTION COMPLAINT**
**JURY TRIAL DEMANDED**

## NATURE OF THE ACTION

1.    Pursuant to Title VII, Section 1981, and Minnesota law, Plaintiff Class

commences this civil rights action to remedy Defendants' widespread exploitation

of Latino, immigrant employees in the construction industry. In their individual

capacities, Plaintiff Class Representatives also assert their individual wage-and-

hour claims under the Fair Labor Standards Act.

2.    Defendants are currently working on the new sports stadiums for both the

Minnesota Twins and the University of Minnesota Golden Gophers. Defendants

also have worked on the nation's largest shopping venue, the Mall of America.

3.    Defendants' illegal policies and practices have taken numerous forms, including

the following:



SCANNED
FEB 04 2008
U.S. DISTRICT COURT MPLS

\*        Limiting the compensation of Latino, immigrant employees to a daily cash

         payment rate that, in some cases, has not even met minimum-wage

         requirements while compensating non-Latino, native-born employees at

         much higher rates and in compliance with federal and state law;

\*        Requiring Latino, immigrant employees to work overtime without overtime

         pay while not imposing such employment conditions on non-Latino, native-

         born employees;

\*        Denying Latino, immigrant employees health care, workers' compensation,

         and other employee benefits while providing those benefits to non-Latino,

         native-born employees;

\*        Denying Latino, immigrant employees required meal and work breaks

         while providing those breaks to non-Latino, native-born employees;

\*        Requiring Latino, immigrant employees to perform less desirable tasks as

         part of their work for Defendants; and

\*        Threatening and retaliating against Latino, immigrant employees when they

         have reported Defendants' unlawful conduct.

4.    Plaintiff Class pursues this litigation on behalf of all construction workers in the

      drywall industry who are Latino and immigrants previously and/or currently

      employed by Defendants as well as Latino immigrants who will be employed by,

      or seek employment with, Defendants during the pendency of this case.

## JURISDICTION

5.     This Court has jurisdiction over the federal employment claims herein and Plaintiff

Class commences this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332(d), 42

U.S.C. §§ 2000e, et seq., 42 U.S.C. § 1981, 29 U.S.C. §§ 201, et seq., and 28 U.S.C.

§ 2201(a).  Under 28 U.S.C. § 1367, this Court's supplemental jurisdiction extends

to the state employment claims herein.

6.     The federal and state employment claims herein arise in the State of Minnesota, so

venue is proper in the Minnesota District of the United States District Court,

pursuant to 28 U.S.C. § 1391.

## PARTIES

**A.     Plaintiff Class Representatives**

### John Doe I

7.     Plaintiff Class Representative John Doe I ("Mr. Doe I") lives in Minnesota.  He is

an employee under the federal and state civil rights statutes and the federal and

state wage-and-hour statutes on which this lawsuit is based.  Defendants employed

him as a construction worker in the drywall industry from approximately January

2007 to September 2007 on the Bridgewater project in Minneapolis, Minnesota

(which is developed by Shamrock Development, Inc.) and on the Hilton Hotel

project in Bloomington, Minnesota.

8.     Mr. Doe I timely filed his employment-related claims against Defendants with the

Equal Employment Opportunity Commission ("EEOC") and the Minnesota

Department of Human Rights ("MDHR").

9.    On January 25, 2008, the EEOC issued Mr. Doe I a "right-to-sue" notice.

10.   Accordingly, Mr. Doe I has exhausted all administrative prerequisites for the maintenance of this litigation.

## John Doe II

11.   Plaintiff Class Representative John Doe II ("Mr. Doe II") lives in Minnesota. He is an employee under the federal and state civil rights statutes and the federal and state wage-and-hour statutes on which this lawsuit is based. Defendants employed him as a construction worker in the drywall industry from approximately April 2007 to July 2007 on the Bridgewater project in Minneapolis.

12.   Mr. Doe II timely filed his employment-related claims against Defendants with the EEOC and MDHR.

13.   On January 25, 2008, the EEOC issued Mr. Doe II a "right-to-sue" notice.

14.   Accordingly, Mr. Doe II has exhausted all administrative prerequisites for the maintenance of this litigation.

## John Doe III

15.   Plaintiff Class Representative John Doe III ("Mr. Doe III") lives in Minnesota. He is an employee under the federal and state civil rights statutes and the federal and state wage-and-hour statutes on which this lawsuit is based. Defendants employed him as a construction worker in the drywall industry from approximately January 2007 to March 2007 on the Bridgewater project in Minneapolis and the M-Flats condominium project in Minneapolis, Minnesota.

16.   Mr. Doe III timely filed his employment-related claims against Defendants with

the EEOC and MDHR.

17. On January 25, 2008, the EEOC issued Mr. Doe III a "right-to-sue" notice.

18. Accordingly, Mr. Doe III has exhausted all administrative prerequisites for the maintenance of this litigation.

### Jane Doe I

19. Plaintiff Class Representative Jane Doe I lives in Minnesota. She is an employee under the federal and state civil rights statutes and the federal and state wage-and-hour statutes on which this lawsuit is based. Defendants employed her as a construction worker in the drywall industry from approximately April 2007 to June 2007 on the Bridgewater project in Minneapolis.

20. Ms. Doe I timely filed her employment-related claims against Defendants with the EEOC and MDHR.

21. On January 25, 2008, the EEOC issued Ms. Doe I a "right-to-sue" notice.

22. Accordingly, Ms. Doe I has exhausted all administrative prerequisites for the maintenance of this litigation.

### John Doe IV

23. Plaintiff Class Representative John Doe IV lives in Minnesota. He is an employee under the federal and state civil rights statutes and the federal and state wage-and-hour statutes on which this lawsuit is based. Defendants employed him as a construction worker in the drywall industry from approximately November 2006 to March 2007 and from July 2007 to September 2007 on the Bridgewater project in Minneapolis, on the M-Flats condominium project in Minneapolis, and on the

Hotel Hilton project in Bloomington.

24. Mr. Doe IV timely filed his employment-related claims against Defendants with the EEOC and MDHR.

25. On January 25, 2008, the EEOC issued Mr. Doe IV a "right-to-sue" notice.

26. Accordingly, Mr. Doe IV has exhausted all administrative prerequisites for the maintenance of this litigation.

## John Doe V

27. Plaintiff Class Representative John Doe V ("Mr. Doe V") lives in Minnesota. He is an employee under the federal and state civil rights statutes and the federal and state wage-and-hour statutes on which this lawsuit is based. Defendants employed him as a construction worker in the drywall industry from approximately January 2007 to September 2007 on the Bridgewater project in Minneapolis and on the Hilton Hotel project in Bloomington.

28. Mr. Doe V timely filed his employment-related claims against Defendants with the EEOC and MDHR.

29. On January 25, 2008, the EEOC issued Mr. Doe V a "right-to-sue" notice.

30. Accordingly, Mr. Doe V has exhausted all administrative prerequisites for the maintenance of this litigation.

## John Doe VI

31. Plaintiff Class Representative John Doe VI lives in Minnesota. He is an employee under the federal and state civil rights statutes and the federal and state wage-and-hour statutes on which this lawsuit is based. Defendants employed him as a

construction worker in the drywall industry from approximately July 2007 to September 2007 on the Bridgewater project in Minneapolis, on the Hilton Hotel project in Bloomington, and on the M-Flats condominium project in Minneapolis.

32.   Mr. Doe VI timely filed his employment-related claims against Defendants with the EEOC and MDHR.

33.   On January 25, 2008, the EEOC issued Mr. Doe VI a "right-to-sue" notice.

34.   Accordingly, Mr. Doe VI has exhausted all administrative prerequisites for the maintenance of this litigation.

### John Doe VII

35.   Plaintiff Class Representative John Doe VII ("Mr. Doe VII") lives in Minnesota. He is an employee under the federal and state civil rights statutes and the federal and state wage-and-hour statutes on which this lawsuit is based. Defendants employed him as a construction worker in the drywall industry from approximately April 2007 to July 2007 on the Bridgewater project in Minneapolis.

36.   Mr. Doe VII timely filed his employment-related claims against Defendants with the EEOC and MDHR.

37.   On January 25, 2008, the EEOC issued Mr. Doe VII a "right-to-sue" notice.

38.   Accordingly, Mr. Doe VII has exhausted all administrative prerequisites for the maintenance of this litigation.

**B.    Defendants**

### Mulcahy, Inc.

39.   Mulcahy, Inc. is a Minnesota corporation with its headquarters at 3050 Echo Lake

Avenue in Mahtomedi, Minnesota.

40.     Defendant Mulcahy, Inc. is an employer under the federal and state civil rights
        statutes and the federal and state wage-and-hour statutes on which this lawsuit is
        based.

41.     On information and belief, Defendant Mulcahy, Inc. has acted directly and
        indirectly in the interest of the other Defendants identified herein regarding
        Plaintiff Class, and Defendant Mulcahy, Inc. is a joint employer, integrated
        enterprise, and/or alter ego of the other Defendants identified herein.

42.     Defendant Gary T. Mulcahy, Sr. is the registered agent for Defendant Mulcahy,
        Inc.

### Mulcahy Development, LLC

43.     Mulcahy Development, LLC is a Minnesota corporation with its headquarters at
        3050 Echo Lake Avenue in Mahtomedi, Minnesota.

44.     On information and belief, Defendant Mulcahy Development, LLC is an employer
        under the federal and state civil rights statutes and the federal and state wage-and-
        hour statutes on which this lawsuit is based, it has acted directly and indirectly in
        the interest of the other Defendants identified herein regarding Plaintiff Class, and
        is a joint employer, integrated enterprise, and/or alter ego of the other Defendants
        identified herein.

45.     Defendant Gary T. Mulcahy, Sr. is the registered agent for Defendant Mulcahy
        Development, LLC.

## Mulcahy Family Limited Liability Limited Partnership

46. Mulcahy Family Limited Liability Limited Partnership is a Minnesota company with its headquarters at 3050 Echo Lake Avenue in Mahtomedi, Minnesota.

47. On information and belief, Defendant Mulcahy Family Limited Liability Limited Partnership is an employer under the federal and state civil rights statutes and the federal and state wage-and-hour statutes on which this lawsuit is based, it has acted directly and indirectly in the interest of the other Defendants identified herein regarding Plaintiff Class, and it is a joint employer, integrated enterprise, and/or alter ego of the other Defendants identified herein.

48. Defendant Gary T. Mulcahy, Sr. is the registered agent for Defendant Mulcahy Family Limited Liability Limited Partnership.

## Mulcahy Family Limited Partnership

49. Mulcahy Family Limited Partnership is a Minnesota company with its headquarters at 5232 Glenbrook Avenue North, Oakdale, Minnesota.

50. On information and belief, Defendant Mulcahy Family Limited Partnership is an employer under the federal and state civil rights statutes and the federal and state wage-and-hour statutes on which this lawsuit is based, it has acted directly and indirectly in the interest of the other Defendants identified herein regarding Plaintiff Class, and it is a joint employer, integrated enterprise, and/or alter ego of the other Defendants identified herein.

51. Defendant Gary T. Mulcahy, Sr. is the registered agent for Defendant Mulcahy Family Limited Partnership.

### Gary Y. Mulcahy, Sr.

52. Gary T. Mulcahy, Sr. ("Defendant Mulcahy) is a resident of Minnesota and Chief Executive Officer of Mulcahy, Inc.

53. On information and belief, Defendant Mulcahy is an employer under the federal and state civil rights statutes and the federal and state wage-and-hour statutes on which this lawsuit is, he has acted directly and indirectly in the interest of the other Defendants identified herein regarding Plaintiff Class, and he is a joint employer, integrated enterprise, and/or alter ego of the other Defendants identified herein.

54. On information and belief, Defendant Mulcahy also has a significant ownership interest and material operational role in the other Defendants identified herein.

### PATTERN AND PRACTICE OF DISCRIMINATION, RETALIATION, DENIAL OF WAGES AND BENEFITS, AND RELATED CONDUCT

55. Defendants exercise complete control over Plaintiff Class in the work that is integral to Defendants' business, including in the following illustrative ways:

   a. Possessing the ability to hire and fire Plaintiff Class;

   b. Setting the rates at which Plaintiff Class is compensated for the work performed;

   c. Setting the days, hours, and location of work for Plaintiff Class; and

   d. Directing Plaintiffs Class regarding particular tasks it performs for Defendants.

56. Plaintiff Class has not been able to profit or lose money from investments in Defendants' business as it has had no investment in Defendants' business. The

work performed by Plaintiffs Class for Defendants' business does not require a high degree of independent initiative in any event.

57. Plaintiff Class shares the same fundamental employment characteristics and employment setting in that, for example, Class Members have performed identical or similar jobs with an identical or similar compensation scheme and have been affected by the same unlawful policies and practices of Defendants.

58. Plaintiff Class together is a victim of a single decision, policy, plan, pattern, and practice by Defendants to discriminate and to deny wages and benefits to which Plaintiff Class Representatives and all similarly situated persons are entitled and to retaliate in response to reports about said violations of federal and state law.

59. Defendants have adopted and maintained a policy, pattern, and practice of treating Latino, immigrant employees unlawfully and differently than their non-Latino, native-born peers. Defendants have engaged in the following such actions, among others:

    a. As a matter of policy and practice, Defendants have required Latino, immigrant employees to work 12 hour days, 6 days per week, on average, while directing non-Latino, native-born employees to work 8 hour days, 5 days per week, on average;

    b. As a matter of policy and practice, Defendants have not provided Latino, immigrant employees overtime pay for overtime worked while, on information and belief, providing non-Latino, native-born employees overtime pay for overtime worked;

c.  As a matter of policy and practice, Defendants have paid Latino, immigrant employees less than the minimum wage while, on information and belief, paying non-Latino, native-born employees in excess of the minimum wage for doing the same work;

d.  As a matter of policy and practice, Defendants have paid Latino, immigrant employees in cash while, on information and belief, paying non-Latino, native-born employees with paychecks at much higher rates and in compliance with federal and state law;

e.  As a matter of policy and practice, Defendants have denied Latino, immigrant employees health care, workers' compensation, and other employee benefits while, on information and belief, providing non-Latino, native-born employees those benefits;

f.  As a matter of policy and practice, Defendants have not provided regular and required breaks to Latino, immigrant employees while, on information and belief, providing regular and required breaks to non-Latino, native-born employees;

g.  As a matter of policy and practice, Defendants have required Latino, immigrant employees to perform less desirable tasks as part of their work for Defendants; and

h.  As a matter of policy and practice, Defendants have threatened to take or have taken other adverse actions when Latino, immigrant employees have reported Defendants' unlawful conduct; for example, Defendants have

made thinly veiled death threats toward Class Members who have reported Defendants' illegal activities.

60. Defendants have had actual and constructive knowledge of the discrimination, retaliation, denial of wages and benefits, and other unlawful conduct experienced by Plaintiff Class, and Defendants have allowed this adverse treatment of Plaintiff Class to continue.

61. The discrimination, retaliation, denial of wages and benefits, and other unlawful conduct have continued because Defendants have failed to take timely and adequate corrective action as a matter of policy and practice.

62. Class Members would want to participate if they knew about this legal action. Nearly all Class Members, however, lack understanding of English and the legal system. Defendants' deceptive and misleading conduct also has prevented Class Members from discovering and asserting their legal claims. Defendants' conduct includes, among other tactics, concealing from Class Members the existence of Class Members' discrimination, retaliation, and wage-and-hour claims and failing to post provisions of civil rights, wage-and-hour, and other applicable legal provisions.

63. Defendants' conduct also has intimidated witnesses and Class Members, discouraging them from participating in this action. Through their retaliatory acts and threats of the same, Defendants have further restricted Plaintiff Class's ability to develop evidence to prove its case.

64. Defendants have carried out their discriminatory, retaliatory actions, wage-and-

hour violations, and other unlawful treatment of Plaintiff Class intentionally, deliberately, willfully, maliciously, wantonly, and with reckless and callous disregard for the legal rights of Plaintiff Class.

65. Defendants' senior management has independently adopted, ratified, condoned, and approved the discriminatory, retaliatory, and otherwise unlawful conduct identified herein.

## CLASS-ACTION ALLEGATIONS UNDER FED.R.CIV.P. 23(a)

66. Pursuant to Fed.R.Civ.P. 23, Plaintiff Class Representatives identified herein seek to represent Plaintiff Class – consisting of all past, present, and potential future construction workers in the drywall industry who are Latino immigrants employed by Defendants – regarding its discrimination, retaliation, and state employment claims. The Plaintiff Class also consists of any Latino immigrants who become potential or actual employees during the pendency of this litigation.

### A. Numerosity

67. Plaintiff Class satisfies the numerosity requirement of Fed.R.Civ.P. 23(a)(1) because Plaintiff Class evidently exceeds 100 individuals. It would be impracticable to bring all, or even a substantial percentage of, such persons before the Court as individual plaintiffs.

### B. Commonality

68. Common questions of law and fact, as defined by Fed.R.Civ.P. 23(a)(2), exist for Plaintiff Class. The resolution of those questions of law and fact will advance the claims of Plaintiff Class as a whole because those questions are the focus of this

litigation. The overarching questions of law and fact common to all members of Plaintiff Class are as follows: whether Defendants, through their management and supervisory workforce, have adopted and maintained policies and practices of discrimination, retaliation, denial of wages and benefits, and other unlawful conduct that are generally applicable to Plaintiff Class. The overarching common issues of law and fact include numerous sub-issues of law and fact that also are common to Plaintiff Class. These sub-issues include, but are not limited to, the following:

a. Whether Defendants have a legitimate, non-discriminatory, and non-retaliatory reason for an array of disparate treatment, including without limitation the following:

    i. Requiring Latino, immigrant employees to work longer hours and more days than non-Latino, native-born employees for less compensation;

    ii. Denying Latino, immigrant employees overtime pay for overtime worked while paying their non-Latino, native-born peers overtime pay for overtime worked;

    iii. Providing fewer, if any, breaks to Latino, immigrant employees than their non-Latino, native-born peers; and

    iv. Denying Latino, immigrant employees benefits provided to their non-Latino, native-born peers.

b. Whether Defendants' employment policies and practices that have adversely affected Latino, immigrant employees violate federal and state law under either a disparate treatment or a disparate impact theory;

c. Whether Defendants have tolerated discrimination and retaliation when they have had actual or constructive knowledge of that conduct;

d. Whether Defendants have treated Latino, immigrant employees less favorably than non-Latino, native-born employees because Defendants have adopted and maintained invidious stereotyping;

e. Whether Defendants have unlawfully denied Plaintiff Class wages and benefits to which Plaintiff Class is entitled based on what federal and state law require; and

f. Whether Defendants' discriminatory and retaliatory policies and practices, denial of wages and benefits, and other unlawful conduct warrant the provision of comprehensive injunctive relief that includes ongoing monitoring by the Court.

## C.    Typicality

69.    In accordance with Fed.R.Civ.P. 23(a)(3), the claims of the above-identified Plaintiff Class Representatives typify the claims of Plaintiff Class in various respects, such as the following:

a. They have been subjected to the same policies and practices of discrimination and retaliation in employment;

b. Their claims turn on allegations that they have been adversely

16

affected in a similar manner in that they have received less favorable treatment than their non-Latino, native-born peers concerning material aspects of employment;

c.    They have been subjected to the same policies and practices of denying wages and benefits to which they are entitled based on what federal and state law require; and

d.    Their claims are based on the same federal and state statutes and underlying legal theories, and they seek the same declaratory, injunctive, and other relief.

**D.    Adequacy**

70.    The above-identified Plaintiff Class Representatives adequately represent Plaintiff Class under Fed.R.Civ.P. 23(a)(4) for many reasons, including without limitation the following:

a.    They are ready, willing, and able to represent Plaintiff Class and have every reason to pursue this action to a successful conclusion;

b.    Their claims are so interrelated with those of other Class Members;

c.    Their interests do not conflict with the interests of other Class Members; and

d.    They have retained counsel experienced in litigating major class actions in the field of civil rights and employment law.

### CLASS-ACTION ALLEGATIONS UNDER FED.R.CIV.P. 23(b)

71.    Class-action status also is warranted here pursuant to Fed.R.Civ.P. 23(b)(2).

17

Defendants have acted on grounds generally applicable to Plaintiff Class, making
declaratory and injunctive relief necessary with respect to Plaintiff Class as a
whole.

72.    Such generally applicable grounds include, but are not limited to, Defendants'
adoption and maintenance of policies and practices of discrimination, retaliation,
wage-and-hour violations, and other unlawful conduct to which Plaintiff Class has
been subjected.

73.    The financial burden of proving that Defendants have engaged in a pattern and
practice of discrimination, retaliation, wage-and-hour violations, and other
unlawful conduct would make the prosecution of individual actions virtually
impossible for most, if not all, Class Members.

74.    Class Members fear they would face further retaliation if they were to pursue
individual actions against Defendants.

75.    Class-action status is also appropriate under Fed.R.Civ.P. 23(b)(3) because the
common questions of law and fact identified herein predominate over questions
affecting only individual members of Plaintiff Class.

76.    A class action is superior to other available methods for the fair and efficient
adjudication of this litigation.

77.    Requiring each Class Member to pursue his or her claim individually would entail
needless and costly duplication and unreasonably tax the federal judiciary's
increasingly scarce resources because, among other things, Class Members allege
that Defendants have subjected them to the same policies and practices of

18

discrimination, retaliation, wage-and-hour violations, and other unlawful conduct.

78.   The financial burden and fear of retaliation outlined herein further warrant class-
      action status under Fed.R.Civ.P. 23(b)(3).

## MATERIAL FACTS AS TO JOHN DOE I

79.   Mr. Doe I typically worked approximately 12 hours per day, 6 days per week. On
      information and belief, his non-Latino, native-born peers have worked
      approximately 8 hours per day, 5 days a week.

80.   Defendants have paid Mr. Doe I approximately $420 per week, on average, as a
      construction worker in the drywall industry, almost always in cash and without
      accompanying employee benefits. On information and belief, Defendants have
      paid his non-Latino, native-born peers with paychecks at much higher rates and
      provided employee benefits in compliance with federal and state law.

81.   Defendants have not paid Mr. Doe I overtime rates for the overtime he has
      worked. On information and belief, Defendants have paid overtime rates to his
      non-Latino, native-born peers if they have worked overtime.

82.   Defendants have denied work and meal breaks to Mr. Doe I that have been
      provided to his non-Latino, native-born peers.

83.   When Mr. Doe I requested spray-painting work in the course of his employment,
      Defendants stated, in sum or substance, "that's work for a White guy, not a
      Mexican."

## MATERIAL FACTS AS TO JOHN DOE II

84.   Mr. Doe II typically has worked approximately 12 hours per day, 6 days per week.

On information and belief, his non-Latino, native-born peers have worked approximately 8 hours per day, 5 days a week.

85. Defendants have paid Mr. Doe II approximately $430 per week, on average, as a construction worker in the drywall industry, almost always in cash and without accompanying employee benefits. On information and belief, Defendants have paid his non-Latino, native-born peers with paychecks at much higher rates and provided employee benefits in compliance with federal and state law.

86. Defendants have not paid Mr. Doe II overtime rates for the overtime he has worked. On information and belief, Defendants have paid overtime rates to his non-Latino, native-born peers if they have worked overtime.

87. Defendants have denied work and meal breaks to Mr. Doe II that have been provided to his non-Latino, native-born peers.

## **MATERIAL FACTS AS TO JOHN DOE III**

88. Mr. Doe III typically has worked approximately 12 hours per day, 6 days per week. On information and belief, his non-Latino, native-born peers have worked approximately 8 hours per day, 5 days a week.

89. Defendants have paid Mr. Doe III approximately $360 per week, on average, as a construction worker in the drywall industry, almost always in cash and without accompanying employee benefits. On information and belief, Defendants have paid his non-Latino, native-born peers with paychecks at much higher rates and provided employee benefits in compliance with federal and state law.

90. Defendants have not paid Mr. Doe III overtime rates for the overtime he has

worked. On information and belief, Defendants have paid overtime rates to his non-Latino, native-born peers if they have worked overtime.

91. Defendants have denied work and meal breaks to Mr. Doe III that have been provided to his non-Latino, native-born peers.

## MATERIAL FACTS AS TO JANE DOE I

92. Ms. Doe I typically has worked approximately 12 hours per day, 6 days per week. On information and belief, her non-Latino, native-born peers have worked approximately 8 hours per day, 5 days a week.

93. Defendants have paid Ms. Doe I approximately $300 per week, on average, as a construction worker in the drywall industry, almost always in cash and without accompanying employee benefits. On information and belief, Defendants have paid her non-Latino, native-born peers with paychecks at much higher rates and provided employee benefits in compliance with federal and state law.

94. Defendants have not paid Ms. Doe I overtime rates for the overtime she has worked. On information and belief, Defendants have paid overtime rates to her non-Latino, native-born peers if they have worked overtime.

95. Defendants have denied work and meal breaks to Ms. Doe I that have been provided to her non-Latino, native-born peers.

## MATERIAL FACTS AS TO JOHN DOE IV

96. Mr. Doe IV typically has worked approximately 12 hours per day, 6 days per week. On information and belief, his non-Latino, native-born peers have worked approximately 8 hours per day, 5 days a week.

97.  Defendants have paid Mr. Doe IV approximately $780 per week, on average, as a construction worker in the drywall industry, almost always in cash and without accompanying employee benefits. On information and belief, Defendants have paid his non-Latino, native-born peers with paychecks at much higher rates and provided employee benefits in compliance with federal and state law.

98.  Defendants have not paid Mr. Doe IV overtime rates for the overtime he has worked. On information and belief, Defendants have paid overtime rates to his non-Latino, native-born peers if they have worked overtime.

99.  Defendants have denied work and meal breaks to Mr. Doe IV that have been provided to his non-Latino, native-born peers.

### MATERIAL FACTS AS TO JOHN DOE V

100.  Mr. Doe V typically has worked approximately 12 hours per day, 6 days per week. On information and belief, his non-Latino, native-born peers have worked approximately 8 hours per day, 5 days a week.

101.  Defendants have paid Mr. Doe V approximately $960 per week, on average, as a construction worker in the drywall industry, almost always in cash and without accompanying employee benefits. On information and belief, Defendants have paid his non-Latino, native-born peers with paychecks at much higher rates and provided employee benefits in compliance with federal and state law.

102.  Defendants have not paid Mr. Doe V overtime rates for the overtime he has worked. On information and belief, Defendants have paid overtime rates to his non-Latino, native-born peers if they have worked overtime.

103. Defendants have denied work and meal breaks to Mr. Doe V that have been provided to his non-Latino, native-born peers.

## MATERIAL FACTS AS TO JOHN DOE VI

104. Mr. Doe VI typically has worked approximately 12 hours per day, 6 days per week. On information and belief, his non-Latino, native-born peers have worked approximately 8 hours per day, 5 days a week.

105. Defendants have paid Mr. Doe VI approximately $540 per week, on average, as a construction worker in the drywall industry, almost always in cash and without accompanying employee benefits. On information and belief, Defendants have paid his non-Latino, native-born peers with paychecks at much higher rates and provided employee benefits in compliance with federal and state law.

106. Defendants have not paid Mr. Doe VI overtime rates for the overtime he has worked. On information and belief, Defendants have paid overtime rates to his non-Latino, native-born peers if they have worked overtime.

107. Defendants have denied work and meal breaks to Mr. Doe VI that have been provided to his non-Latino, native-born peers.

## MATERIAL FACTS AS TO JOHN DOE VII

108. Mr. Doe VII typically has worked approximately 12 hours per day, 6 days per week. On information and belief, his non-Latino, native-born peers have worked approximately 8 hours per day, 5 days a week.

109. Defendants have paid Mr. Doe VII approximately $430 per week, on average, as a construction worker in the drywall industry, almost always in cash and without

accompanying employee benefits. On information and belief, Defendants have paid his non-Latino, native-born peers with paychecks at much higher rates and provided employee benefits in compliance with federal and state law.

110. Defendants have not paid Mr. Doe VII overtime rates for the overtime he has worked. On information and belief, Defendants have paid overtime rates to his non-Latino, native-born peers if they have worked overtime.

111. Defendants have denied work and meal breaks to Mr. Doe VII that have been provided to his non-Latino, native-born peers.

## INJURY AND DAMAGE TO PLAINTIFF CLASS

112. By reason of Defendants' unlawful conduct, described herein, Plaintiff Class has sustained loss and damage, including, but not limited to, the following:

   a. Deprivation of equal employment opportunities and compensation as compared to non-Latino, native-born employees of Defendants;

   b. Withheld wages and benefits, such as vacation time, sick leave, health-care coverage, and workers' compensation benefits; and

   c. "Garden variety" emotional distress, mental anguish, personal embarrassment, and humiliation.

## FIRST CAUSE OF ACTION:
## RACE AND NATIONAL ORIGIN DISCRIMINATION

113. Plaintiff Class restates and realleges the allegations contained herein above.

114. Defendants' policies and practices violate 42 U.S.C. § 2000e-2(a)(1) and Minn.Stat. § 363A.08, Subd. 2 in that Defendants have discriminated against

Plaintiff Class regarding terms, conditions, and privileges of employment because of race and national origin.

115. Defendants' policies and practices also limit, segregate, and classify Plaintiff Class in ways that deprive Plaintiff Class of equal employment opportunities and otherwise adversely affect employment status because of race and national origin, in violation of 42 U.S.C. § 2000e-2(a)(2) and Minn.Stat. § 363A.08, Subd. 2.

116. As a matter of policy and practice, Defendants have made statements about employment opportunities indicating a preference, limitation, specification, and discrimination based on race and national origin, in violation of 42 U.S.C. § 2000e-3(b) and Minn.Stat. § 363A.08, Subd. 2.

117. As a matter of policy and practice, Defendants have further discriminated based on race, in violation of 42 U.S.C. § 1981, by denying Plaintiff Class the same rights to make and enforce contracts and otherwise to receive the full and equal benefit of all laws as is enjoyed by White persons.

## SECOND CAUSE OF ACTION: RETALIATION

118. Plaintiff Class restates and realleges the allegations contained herein above.

119. Defendants' policies and practices violate 42 U.S.C. § 2000e-2(a)(1), 3(a), 29 U.S.C. § 215(a)(3), and Minn.Stat. § 363A.15 in that Defendants have taken adverse action against Plaintiff Class for lodging reports about the denial of compensation due and about discrimination as well as for otherwise opposing discrimination in employment by Defendants.

25

## THIRD CAUSE OF ACTION:
## AIDING AND ABETTING

120.   Plaintiff Class restates and realleges the allegations contained herein above.

121.   Defendants' policies and practices violate Minn.Stat. § 363A.14 in that

Defendants have intentionally attempted to aid, abet, incite, compel, and coerce a

person to engage in discrimination and retaliation.  Defendants' policies and

practices also violate Minn.Stat. § 363A.14 in that Defendants have intentionally

aided, abetted, incited, and compelled discrimination and retaliation.

## FOURTH CAUSE OF ACTION:
## DENIAL OF REQUIRED COMPENSATION

122.   Plaintiff Class restates and realleges the allegations contained herein above.

123.   Defendants' policies and practices violate 29 U.S.C. §§ 206, 207, and 215 as well

as Minn.Stat. §§177.24, 177.25, 181.721, and 181.74  in that Defendants have

failed to pay Plaintiff Class the minimum wage, failed to pay overtime rates for

overtime worked, and failed to provide employee benefits.  In their individual

capacities, Plaintiff Class Representatives pursue their individual wage-and-hour

claims under the Fair Labor Standards Act.

## JURY DEMAND

Plaintiff Class hereby demands trial by jury of all issues properly triable thereby.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Class respectfully requests that the Court provide the following relief:

A.   Declaring, adjudging, and decreeing that this case be maintained as a class action and that counsel for Plaintiff Class be designated as class counsel of record for Plaintiff Class;

B.   Pursuant to 28 U.S.C. § 2201(a), declaring, adjudging, and decreeing that Defendants have engaged in the violations of law set forth herein;

C.   Granting Plaintiff Class temporary and permanent injunctive relief, enjoining Defendants from engaging in such unlawful conduct in the future;

D.   Granting Plaintiff Class temporary and permanent injunctive relief, requiring Defendants to adopt employment policies and practices in conformity with the federal and state laws they have been found to violate herein;

E.   Declaring, adjudging, and decreeing that the Court shall retain jurisdiction over Defendants until such time as the Court is satisfied Defendants have remedied their improper policies and practices and are otherwise complying fully with federal and state law;

F.   Awarding to Plaintiff Class the back pay and related employee benefits for work actually performed and proved at trial and an equal sum in liquidated damages for a total economic damages award in excess of $5,000,000.00;

G.   Awarding to Plaintiff Class compensatory damages proved at trial;

H.   Pursuant to Minn.Stat. § 363A.29, Subd. 4, awarding to Plaintiff Class three times the general and special damages proved at trial;

I.   Assessing punitive damages regarding all applicable claims;

J.   Awarding to Plaintiff Class the cost of its suit, including, but not limited to, expert fees and other expenses of this litigation;

K.   Awarding to Plaintiff Class its reasonable attorney's fees;

L.   Awarding to Plaintiff Class pre- and post-judgment interest on the foregoing amounts;

M.   Assessing civil penalties and fines for the violations of law set forth herein; and

N.   Granting to Plaintiff Class such other and further relief as may be just and appropriate.

Dated:  February 4, 2008                 **MILLER O'BRIEN CUMMINS, PLLP**

M. William O'Brien, # 130229
Justin D. Cummins, # 276248
Brendan D. Cummins, # 276236
One Financial Plaza
120 South Sixth Street, Suite 2400
Minneapolis, MN  55402
612-333-5831

**ATTORNEYS FOR PLAINTIFF CLASS**