UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

John Doe I, John Doe II, John Doe III,  Civil No. 08-306 (DWF/SRN)
Jane Doe I, John Doe IV, John Doe V,
John Doe VI, and John Doe VII,

        Plaintiffs,

v.  **ORDER**

Mulcahy, Inc.; Mulcahy Development, LLC;
Mulcahy Family Limited Liability Partnership;
Mulcahy Family Limited Partnership; and Gary T.
Mulcahy, Sr. in his official and personal capacities,

        Defendants.

_____

Brendan D. Cummins, Esq., Justin D. Cummins, Esq., and M. William O'Brien, Esq., Miller O'Brien Cummins, PLLP, counsel for Plaintiffs.

Krista A. P. Hatcher, Esq., Lindsay J. Zamzow, Esq., and Richard A. Ross, Esq., Fredrickson & Byron, PA, counsel for Defendants.

_____

**INTRODUCTION**

This matter is before the Court on Defendants' Objections to the Magistrate Judge's July 7, 2008 Order, granting Plaintiffs' Motion for a Protective Order and shielding Plaintiffs' medical records from discovery.[1] For the reasons stated below, the Court respectfully reverses the July 7, 2008 Order.

---

[1]     Defendants also object to the July 7, 2008 Order to the extent that the Magistrate
                                     (Footnote Continued on Next Page)

**BACKGROUND**

In this proposed class action, Plaintiffs, who are Latino immigrants, allege violations of state and federal civil rights and wage and hour laws. Plaintiffs also allege damages flowing from those violations, including "'[g]arden [v]ariety' emotional distress, mental anguish, personal embarrassment, and humiliation." [2] (Doc. 1 ¶ 112 c.)

Shortly after commencing this action and prior to being served with any discovery requests, Plaintiffs preemptively filed a motion for a protective order after learning that Defendants believed that Plaintiffs' medical records were discoverable, despite the fact

---

(Footnote Continued From Previous Page)
Judge characterized Jesus Mancha, Alejandro Verdugo, and Raul Quezada as supervisors or individuals who otherwise had authority to act on Defendants' behalf. After reviewing the July 7, 2008 Order and noting the context of the discussion, the Court concludes that the Magistrate Judge's characterization is neither clearly erroneous nor contrary to law. Accordingly, the Court affirms that portion of the July 7, 2008 Order.

[2]   Plaintiffs, defendants, courts, and commentators routinely use the phrase "garden variety emotional distress." *See, e.g., Lane v. Pfizer, Inc.*, Civ. No. 04-683 (CVE/PJC), 2007 WL 221959 (N.D. Okla. Jan. 25, 2007) (defining garden variety emotional distress as "the normal distress that might flow from an unpleasant experience."); *Fitzgerald v. Cassil*, 216 F.R.D. 632, 637 (N.D. Ca. July 31, 2003) (describing "garden variety" claims as "ordinary and commonplace emotional distress" that is "simple or usual," as compared to complex distress resulting in a specific psychiatric disorder). Here, Plaintiffs explain that their emotional distress claims are "garden variety" because they "are not pursuing tort claims for emotional distress, alleging they suffer from a mental disorder, relying on medical records or expert testimony to establish emotional harm or causation therefore, or otherwise conceding their mental condition is 'in controversy.'" (Doc. No. 41 at 8-9; Doc. No. 79 at 5.) Plaintiffs define "garden variety" emotional distress damages as those caused by "a violation of a civil rights statute . . . and those damages are proved (sic) by lay testimony rather than expert testimony or medical records." (Doc. No. 41 at 11; Doc. No. 79 at 8.) To the extent that use of the "garden variety" phrase diminishes or belittles the very real emotional distress a plaintiff can experience when an employer violates civil
(Footnote Continued on Next Page)

that Plaintiffs intended to rely only on non-medical testimony to support their emotional distress damages claim.  The basis for their motion was that "garden variety" emotional distress damages do not place medical records "in controversy" under Federal Rule of Civil Procedure 35.  Therefore, regardless of the amount of potential recovery or whether they have suffered physical manifestations, Plaintiffs asserted that any discovery into their medical records was prohibited.  Plaintiffs contended that the appropriate inquiry with respect to the discovery of medical records is whether a plaintiff has waived his or her privilege, not whether the medical records are relevant as defined by Federal Rule of Civil Procedure 26.

Defendants responded that Plaintiffs' request should be analyzed under Rule 26, not Rule 35, and that such records are discoverable because they are relevant to Defendants' defenses.  They insisted that they "have no intention of engaging in a fishing expedition for Plaintiffs' entire physical and mental histories" but that they should have the ability to discover "whether Plaintiffs' relevant medical records indicate other, independent causes for their alleged emotional distress."  (Doc. No. 54 at 8.)  Defendants also noted that federal common law recognizes only a psychotherapist-patient privilege, not a physician-patient privilege, and that Plaintiffs waived that privilege by seeking more than nominal emotional distress damages.

---

(Footnote Continued From Previous Page)
rights laws, the Court notes its distaste for the phrase.

The Magistrate Judge agreed with Plaintiffs that "a determination of whether medical records are discoverable 'necessarily implicates' Rule 35(a)(1)" because there are "clear parallels between the analysis of whether a mental condition is 'in controversy' for the purposes of a mental health examination, and whether the issue of mental health is 'in controversy' for the purposes of compelling a party to turn over her medical records." (Doc. No. 73 at 4 (internal quotations and citations omitted).) Using that standard, the Magistrate Judge concluded:

> [T]he type of emotional distress claimed by the Doe Plaintiffs is not sufficient to place their mental conditions in controversy and subject their medical records to discovery. The emotional distress alleged by the Doe Plaintiffs consists of ordinary and healthy responses—such as anger, resentment, and sadness—to the alleged wrongful conduct by the Mulcahy Defendants. This type of emotional distress is entirely different from a mental condition requiring medical treatment. Furthermore, the Doe Plaintiffs will not offer any medical evidence, in the form of expert testimony or documents, to support their claim for emotional distress damages, and nothing precludes them from attempting to prove emotional distress without such evidence. Finally, the Doe Plaintiffs have not alleged a separate cause of action based on the distress, such as intentional or negligent infliction of emotional distress, which would inherently place their mental conditions at issue. Because the Doe Plaintiffs' mental conditions are not in controversy, their medical records are protected from disclosure.

(*Id*. at 4-5 (citations omitted).)

**DISCUSSION**

A court must modify or set aside any portion of a Magistrate Judge's Order found to be clearly erroneous or contrary to law.  *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); Local Rule 72.1(b)(2).  This is an "extremely deferential" standard.  *Reko v. Creative Promotions, Inc.*, 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999).  "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Chakales v. Comm'r of Internal Revenue*, 79 F.3d 726, 728 (8th Cir. 1996) (internal quotations and citations omitted).

Because Rules 26 and 35 were the focus of Defendants' objections, Plaintiffs' response to the objections, and the July 7, 2008 Order, the Court will concentrate on that issue.  The Court first notes, however, that it considers Plaintiffs' Motion for a Protective Order to be premature.  Unlike the cases discussed below, Defendants have yet to serve requests for admissions and interrogatories or to depose Plaintiffs.  Without information gained from such discovery procedures, the Court cannot evaluate whether Defendants' requests satisfy Rule 26(b)'s relevancy requirement or whether Plaintiffs have established "good cause" under Rule 26 to justify the issuance of a protective order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).

"As the party resisting discovery, the burden is on Plaintiffs to clarify and explain their objections and to provide support for those objections."  *Merrill v. Waffle House,*

*Inc.*, 227 F.R.D. 467 (N.D. Tex. 2005). Here, even if it was not premature, the Court has been provided no independent basis to grant or deny Plaintiffs' Motion for a Protective Order or to otherwise order discovery (staged or otherwise) and/or an *in camera* review. Given this, the Court concludes that Plaintiffs have failed to meet their burden and therefore respectfully reverses the Magistrate Judge's July 7, 2008 Order with respect to the issuance of the Protective Order. However, as the Court explains below, the Court's ruling is not tantamount to making the unidentified medical records subject to disclosure without a threshold showing of relevance by the Defendants.

Rule 26 provides, in relevant part:

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). Rule 35, entitled "Physical and Mental Examinations," allows a court to order "a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1).

Defendants' objection and Plaintiffs' response reiterate many of the arguments previously made to the Magistrate Judge. Specifically, Defendants contend that the Magistrate Judge applied the incorrect procedural rule and failed to consider the relevance of Plaintiffs' medical records to Defendants' defense. In doing so, Defendants state that

"[t]he Magistrate Judge's Order effectively makes medical records presumptively nondiscoverable where 'garden variety' emotional distress is alleged." (Doc. No. 75 at 3.) Defendants note that access to medical records is far less intrusive than an independent medical examination and that Plaintiffs' medical records are crucial to Defendants' determination of whether other independent forces caused Plaintiffs' emotional distress. According to Defendants, Plaintiffs put their medical condition "at issue" by alleging emotional distress damages, which in turn, allows them access to Plaintiffs' medical records under Rule 26 because the records are both relevant and non-privileged. (*Id*. at 4.) Defendants contend that they are entitled to Plaintiffs' medical records, whatever their content may be, regardless of whether Plaintiffs tend to use the medical records or experts at trial.

Relying on *Jaffee v. Redmond*, 518 U.S. 1 (1996), Plaintiffs respond that medical records are privileged and that the appropriate inquiry in this instance is whether a plaintiff waived his or her privilege by placing his or her mental condition in controversy, not whether the medical records are probative. Plaintiffs explain they did not waive any privilege because they intend to rely solely on non-medical testimony to support their garden variety emotional distress damages claims, the "touchstone" of which are "whether they are established only by lay testimony and flow from a violation of a civil rights statute." (Doc. No. 79 at 9-10.) According to Plaintiffs, it is irrelevant whether they are seeking more than nominal damages or whether they are asserting emotional distress damages in the form of physical manifestations such as headaches, stomach

aches, and sleeplessness. Further, because the medical records will not prove causation for their claims, Plaintiffs contend that medical records cannot be used by Defendants to disprove causation.

The parties' all-or-nothing approach is a red herring to the Court. Plaintiffs ask the Court for blanket protection. In contrast, Defendants seek unfettered access. The liberal discovery rules and notice pleading requirements do not require either extreme. Moreover, the best interests of a plaintiff or a defendant rarely will be served by such extremes. Instead, a balanced approach is needed. *See, e.g., Jensen v. Astrazeneca, LP*, Civ. No. 02-4844 (JRT/FLN), 2004 WL 2066837 at * 4 (D. Minn. Aug. 30, 2004) (affirming magistrate judge's denial of motion to compel after plaintiff had produced medical records for a specific, relevant time period and noting approval of cases that placed certain limits on discovery of medical records under Rule 26).

The Court rejects the notion and Plaintiffs' assertion that—irrespective of the circumstances of a case and without the benefit of staged discovery to establish relevance—where a plaintiff alleges so-called garden variety emotional distress damages, medical records will never be subject to disclosure, regardless of whether they describe a physical condition or manifestation of a mental health or other physical condition. So too, the Court rejects the notion and Defendants' assertion that—irrespective of the circumstances of a case and without the benefit of staged discovery to establish relevance—where a plaintiff alleges so-called garden variety emotional distress damages, the discovery door opens wide to give a defendant carte blanche access to a plaintiff's

medical records, regardless of what type of information is contained in those records.

As the parties know, there is a split of authority in this District concerning what discovery rule applies to the production of medical records for emotional distress claims.[3] *Compare, e.g., Dochniak v. Dominium Mgmt. Serv.*, Civ. No. 06-237 (JRT/FLN), 2006 WL 3156539 (D. Minn. July 26, 2006), *aff'd* 240 F.R.D. 451, 452 (D. Minn. 2006) (using Rule 35 and concluding defendant not entitled to medical records because she had not waived privilege or placed mental condition in controversy); *Blake v. U.S. Bank Nat'l Ass'n*, Civ. No. 03-6084 (PAM/RLE), 2004 WL 5254174 (D. Minn. May 19, 2004) (denying motion to compel and concluding that "absent some specific, particularized showing, the production of medical records is governed by the 'in controversy' requirement of Rule 35") *with Sandoval v. Am. Bldg. Maint. Indus., Inc.*, Civ. No. 06-1772 (RHK/JSM), (D. Minn. Oct. 23, 2007) (using Rule 26 and concluding defendant was entitled to medical records that reflect mental health issues and the manifestations of those mental health issues); *Briel v. Chang O'Hara's Bistro, Inc.*, Civ. No. 03-6549 (RHK/AJB) (D. Minn. July 13, 2004) (concluding under Rule 26 that plaintiff had placed mental health in issue and had waived privilege); *Walker v. Nw. Airlines Corp.,* Civ. No. 00-2604 (MJD/JGL), 2002 WL 32539635 (D. Minn. Oct. 28, 2002) (using Rule 26 and concluding that defendant was entitled to determine whether

---

[3]   Plaintiffs' lawyers should be particularly well aware of the split, given that Mr. Cummins was one of the attorneys in *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, Civ. No. 06-1772 (RHK/JSM) (D. Minn. Oct. 23, 2007).

plaintiff's relevant medical history shows emotional distress was caused by independent circumstances).  To explain the split of authority, these cases often factually distinguish themselves from one another based on whether nominal damages were sought, physical manifestations alleged, or experts are to be called.  The Court finds these to be differences without distinction.  Moreover, the Court finds that some of these cases conflate privilege/waiver with relevancy, medical records with medical examinations, and generic medical records with mental-health-related medical records.

In *EEOC v. Sheffield Financial, LLC*, No. 1:06CV00889, 2007 WL 1726560 (M.D.N.C. June 13, 2007), the defendant filed a motion to compel and requested that plaintiff provide complete responses to certain interrogatories and produce medical records.  *Sheffield*, No. 1:06CV00889, 2007 WL 1726560 at * 1-2.  The EEOC objected, contending that the requests were an invasion of privacy.  *Id*. at * 2.  Reviewing the relevancy standard under Rule 26, the court concluded that the requested discovery was relevant, regardless of whether the plaintiff intended to present any expert testimony: "[s]ince [p]laintiff seeks compensatory damages for 'past and future emotional distress, humiliation, anxiety, inconvenience, and loss of enjoyment of life,' [d]efendant is entitled to discover information concerning [plaintiff's] medical, mental, and pharmaceutical history to determine if any prior event may affect his demand for damages." *Id* at * 4.  The court noted that access to medical records is governed by Rule 26, not Rule 35, and that the protective order in the case would protect the plaintiff's privacy.  *Id*. at * 5-6.  Ultimately, the *Sheffield* court concluded that a party's medical condition can be both

relevant under Rule 26 and not in controversy under Rule 35. *Id*. at * 5.

After carefully reviewing the case law both in and out of this District, the Court finds the *Sheffield* court to be persuasive and concludes that a party's medical records and related information can be both relevant under Rule 26 and not in controversy under Rule 35. Depending on each case's specific facts, the Court can envision situations where the identities of certain—but not all—healthcare providers, dates of treatment, and nature of treatment could be, under Rule 26(b)(1), relevant to claims of emotional distress damages. *See, e.g., Merrill,* 227 F.R.D. at 471- 73 (concluding that only records pertaining to mental anguish claims were relevant). Moreover, assuming such information is indeed relevant, that information would not be privileged or subject to any waiver because only actual communications between therapists and patients are protected. *Jaffe,* 518 U.S. at 15 (finding under Federal Rule of Evidence 501 that a psychotherapist-patient privilege exists under federal common law and is rooted in the imperative need for confidence and trust). In contrast, one example of a waiver situation would be when a plaintiff places his or her mental condition "at issue" by relying on communications with their therapist to establish a claim for emotional distress damages. *See Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000).

A review of the relevant case law establishes some best practices that often involve staged discovery for dealing with discovery-related issues involving claims for emotional distress damages. Here, as noted earlier, neither party has addressed the content of the medical records. A defendant must initially establish a need for medical records through

narrowly-tailored interrogatories, requests for admissions, or deposition testimony that seek information related to psychological or mental-health records, as opposed to "pure" medical records or broad boilerplate requests.  *See Fitzgerald v. Cassil*, 216 F.R.D. 632, 635 (N.D. Ca. 2003) (defining two types of medical records and explaining differences between them); *see also Moore v. Chertoff*, Civ. No. 00-953 (RWR/DAR), 2006 WL 1442447 (D.D.C. May 22, 2006) (listing cases concerning when disclosure was appropriate based on discovery responses received prior to the request for medical records).  Acknowledging a federal common law psychotherapist-patient privilege, a defendant may seek such discovery from medical records that does not involve actual communications between a therapist and patient, including the occurrence and dates of any psychotherapy, whether plaintiff sought therapy, or other witnesses' impressions of whether a plaintiff has exaggerated his or her mental distress.  Assuming that a defendant met his or her burden, the burden then would shift to the plaintiff to establish a need for a protective order.  Finally, in certain circumstances, the Court anticipates that it may need to conduct an *in camera* review of medical records in order to rule on relevancy and privilege issues.

Here, the parties agree that emotional distress damages are recoverable in civil rights cases and that such damages can be established without medical or other expert testimony.  At this stage, however, no discovery has taken place, and Plaintiffs have

offered no stipulations[4] on which to evaluate Defendants' need for discovery and Plaintiffs' right to privacy. Given this, no one knows whether Plaintiffs' medical records are relevant to Defendants' defenses. Without more information, the Court finds the July 7, 2007 Order to be clearly erroneous and respectfully reverses it by denying without prejudice Plaintiffs' Motion for a Protective Order.

## CONCLUSION

The Court takes exception to the Defendants' suggestion that the Magistrate Judge displayed "partiality toward Plaintiffs." There is nothing in the record to support that assertion. Nevertheless, the Court is extremely focused on ensuring that a plaintiff is never fearful that he or she will be put on trial by pleading emotional distress damages. At the same time, a defendant should always be able to adequately defend himself or herself. The Court hopes that this Order establishes a best practice of first requiring a defendant to demonstrate a basis for relevancy before access to medical records is given. The Court believes that such a result adequately balances all parties' concerns by allowing a defendant to explore defenses without harassing or invading the privacy of a plaintiff unless the discovery sought is relevant to a claim or defense of a party.

**IT IS HEREBY ORDERED** that:

1.      Consistent with this Order, the Magistrate Judge's July 7, 2008 Order (Doc.

---

[4] For example, Plaintiffs could offer stipulations representing what is contained in the medical records, whether there are any pre-existing conditions, whether any physical manifestations are claimed beyond life's normal stressors, or whether the Plaintiffs have

(Footnote Continued on Next Page)

No. 73) is **REVERSED** with respect to the protective order and **AFFIRMED** with respect to the characterization of three employees as supervisors.

Dated:  October 14, 2008		s/Donovan W. Frank
				DONOVAN W. FRANK
				Judge of United States District Court

---

(Footnote Continued From Previous Page)
sought counseling prior to, during, or after the alleged incidents.